**Richard S. WHEELER and Adele T. Wheeler, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. 03–40128–FDS.**

United States District Court, D. Massachusetts.

Aug. 24, 2005.

Carl E. Baylis, Worcester, MA, for Plaintiffs.

Stephen J. Turanchik, U.S. Department of Justice, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SAYLOR, District Judge.

This case involves the federal tax consequences of a decision by a local retirement board authorizing the retroactive payment of occupational-disability benefits to a retired firefighter. Generally speaking, ordinary retirement benefits are taxable, but occupational-disability benefits are not. The issue before the Court is whether the board's retroactive reclassification of previously-paid benefits—originally paid as ordinary retirement benefits, but later reclassified as disability benefits—entitles the retiree to a refund of the federal income tax paid on the income prior to the reclassification. For the reasons set forth below, the Court concludes that it does not.

### I. Background

Richard Wheeler and Adele Wheeler are husband and wife. Mr. Wheeler is a former Worcester firefighter. In December 1994, Mr. Wheeler was diagnosed with prostate cancer; he had surgery to address the cancer on January 20, 1995.

On May 11, 1996, at age 62, Mr. Wheeler retired from the Worcester Fire Department on the basis of "superannuation"— what is commonly referred to as old age. Superannuation retirement for firefighters is governed by Mass. Gen. Laws ch. 32, § 5, which provides that a retiree's benefits are calculated by reference to his or her age and years of creditable service.

At the time, Mr. Wheeler was also eligible to retire on the basis of occupational disability. In 1990, the Massachusetts legislature enacted Mass. Gen. Laws ch. 32, § 94B, which creates a rebuttable presumption that a Massachusetts firefighter who develops certain forms of cancer suffered that injury in the line of duty. Section 94B, as in effect in 1996, provided in relevant part:

> Notwithstanding the provisions of any general or special law to the contrary, any condition of cancer affecting the skin or the central nervous, lymphatic, digestive, hematalogical [sic], urinary, skeletal, oral or prostate systems, lung or respiratory tract, resulting in total disability or death to a uniformed member of a paid fire department ... shall, if he successfully passed a physical examination on entry into such service or subsequent to such entry, which examination failed to reveal any evidence of such condition, be presumed to have been suffered in the line of duty, unless it is shown by a preponderance of the evidence that non-service connected risk factors or non-service connected accidents or hazards undergone, or any combination thereof, caused such incapacity.

Mass. Gen. Laws ch. 32, § 94B(1). With the assistance of that rebuttable presumption, Mr. Wheeler could have retired under

the occupational-disability provision of Mass. Gen Laws ch. 32, § 7.

Mr. Wheeler apparently did not know about his eligibility under § 94B when he elected superannuation retirement in 1996. In October 1999, having become aware of the law, he reapplied for retirement, this time seeking occupational-disability retirement benefits under Mass. Gen. Laws ch. 32, §§ 7 and 94B. On May 25, 2000, the City of Worcester Retirement Board granted Mr. Wheeler's application—retroactive to his original May 1996 retirement date. The change from superannuation retirement to occupational-disability retirement resulted in an increase in the monthly benefit paid to Mr. Wheeler from $1,596.66 to $2,423.40. Mr. Wheeler also received a lump-sum payment to make up the difference between the superannuation payments he received from May 1996 to May 2000 and the higher disability payments.[1]

For the years 1997, 1998, and 1999, Mr. and Mrs. Wheeler filed joint federal income-tax returns. They fully paid their reported income taxes for those years, including taxes payable on the superannuation retirement benefits received by Mr. Wheeler. On April 17, 2001, after the Board's decision giving retroactive effect to Mr. Wheeler's occupational-disability retirement, the Wheelers filed Claims for Refund with the Internal Revenue Service for the years 1997, 1998 and 1999, contending that the income they had received as superannuation benefits had been reclassified as disability benefits and thus was no longer taxable. The Wheelers claimed the following amounts as refunds:

| | |
|---|---|
| 1997: | $2,479 |
| 1998: | $2,456 |
| 1999: | $2,869 |
| Total: | $7,804 |

On June 13, 2001, the IRS denied the Wheelers' refund claims. On June 10, 2003, the Wheelers filed this action seeking a refund of federal income taxes for the relevant years.

The matter is now before the Court on cross-motions for summary judgment. The Wheelers contend that they are entitled to a refund for the three relevant periods because the Board's retroactive decision renders the retirement payments they received during those years nontaxable. The government disagrees, arguing that, because the payments made during those years were actually superannuation-retirement payments, they are taxable notwithstanding the retroactive effect given them by the Board.

There are no contested facts in this case; the only dispute concerns which party is entitled to judgment as a matter of law based on the submitted facts. Under these circumstances, summary judgment is appropriate. *See* Fed.R.Civ.P. 56(c).

## II. *Analysis*

■ The Internal Revenue Code defines gross income to include all income from whatever source derived, including annuities and pensions. 26 U.S.C. § 61(a). The general rule is that all income is taxable unless specifically excluded from gross income. *See Kane v. United States*, 43 F.3d 1446, 1451 (Fed.Cir.1994). "The income taxed is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively. The exemptions, on the other hand, are specifically stated and should be construed with restraint in the light of the same policy." *Commissioner*

---

**1.** The tax treatment of the lump-sum distribution, and the disability benefits paid after May 2000, is not at issue in this litigation.

*v. Jacobson,* 336 U.S. 28, 48, 69 S.Ct. 358, 93 L.Ed. 477 (1949).

The exclusion invoked by the Wheelers is set forth in 26 U.S.C. § 104(a)(1), which excludes from gross income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness." The statute's implementing regulation interprets this section to exclude amounts "received by an employee under a workmen's compensation act ... or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." 26 C.F.R. § 1.104–1(b). The same regulation goes on to state that the exclusion provided by "section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness." *Id.* The purpose of the regulation is to distinguish between benefits that are intended to compensate an employee for lost earning capacity due to a workplace injury and ordinary retirement benefits that are paid in consideration of past services. *Wiedmaier v. Commissioner,* 774 F.2d 109, 111 (6th Cir.1985); *cf. O'Gilvie v. United States,* 519 U.S. 79, 84–85, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996) (explaining that the rationale underlying 26 U.S.C. § 104(a)(2) is that excluded sums are paid "to make a victim whole or ... 'return the victim's personal or financial capital'" and therefore are not income).

█ It is undisputed that superannuation benefits under Mass. Gen. Laws ch. 32, § 5 are not intended to compensate the recipient for lost earning capacity due to an occupational injury and therefore do not qualify for the exclusion. It is also apparently undisputed that the occupational-disability benefits Mr. Wheeler has received since May 2000 under Mass. Gen. Laws ch. 32, §§ 7 are not taxable. The only issue is whether the benefits paid in 1997, 1998, and 1999—originally paid as superannuation retirement and taxable when received—now qualify for the exclusion because of their retroactive reclassification by the Board as occupational-disability benefits.

The text of the statute itself does not speak to the effect, if any, to be given to the retroactive decision of a local administrative body. The statute excludes from gross income "amounts *received* under workmen's compensation acts as compensation for personal injuries or sickness...." 26 U.S.C. § 104(a)(1) (emphasis added). As the government points out, the amounts paid to the Wheelers in 1997, 1998, and 1999 were "received" under the superannuation-retirement statute, not under the disability statute. The Wheelers' position, in contrast, assumes that the Board possessed a power to change events that have occurred in the past: to take taxable income actually "received" under the superannuation statute and transform it, after the fact, into income deemed to have been "received" under the disability statute. If such a power exists, it is not set forth in any statute or regulation, nor is it reflected in the case law. As one court has explained:

> Tax liability is, of course, computed on an annual basis, and we know of no law or principle of law (and petitioner has cited us to none) which, in 1970, can be said to have transformed a portion of petitioner's 1967 and 1969 retirement pay into VA compensation, subject to exclusion from gross income.

*Cleary v. Commissioner,* 60 T.C. 133, 139, 1973 WL 2649 (1973) (internal citation omitted). The fact that the Board granted

retroactive effect to Mr. Wheeler's occupational-disability retirement does not change the fact that the amounts he "received" during the tax years in question were superannuation payments.

■ The government also draws the Court's attention to Revenue Ruling 74–582, 1974–2 C.B. 34, interpreting 26 C.F.R. § 1.104–1.[2] There, the IRS was asked to provide advice regarding two situations where the issue presented was whether pension payments were retroactively excludable from gross income under § 104. In the first situation, a veteran had originally retired under a regular, service-related retirement plan. After a reevaluation of his medical records by the Air Force, it was determined that he was entitled to retire for physical disability. If the taxpayer's medical records had been properly evaluated in the first place, he would have retired for physical disability. Accordingly, the taxpayer was permitted to exclude the payments retroactively from gross income.

In the second situation, a municipal police officer had the right to retire under either a length-of service retirement plan or a disability plan. The officer elected to retire under the length-of-service plan in 1964. Those payments were taxable because the plan did not qualify as a worker's compensation plan. Subsequently, in 1973, the officer applied for, and was granted, an increased pension based on disability. The municipality computed the disability pension as retroactive to 1972. The IRS concluded that the payments in 1972 remained taxable because the taxpayer had initially elected length-of-service retirement. Because the officer made an affirmative election to accept length-of-service retirement, as opposed to being categorized erroneously, the officer was bound by that election.

Revenue Ruling 74–582 is a reasonable and longstanding position of the IRS that is entitled to substantial deference. Moreover, it comports with the Court's reading of statute. Like the police officer in that ruling, at the time of his retirement, Mr. Wheeler was eligible for both superannuation retirement and occupational-disability retirement, and he elected superannuation. Unlike the veteran, Mr. Wheeler was not erroneously categorized; he was, at most, ill-informed. As such, the Wheelers are bound by the election of superannuation, and they are not eligible for the exclusion for 1997, 1998, and 1999.

The Court's conclusion is also consistent with the other cases cited by the government. In particular, the decision of the United States Tax Court in *Gabriel v. Commissioner*, T.C. Memo 2000–328, 80 T.C.M. (CCH) 568 (2000), presents facts similar to the situation here. In *Gabriel*, the taxpayer was a former firefighter who retired because of an occupational injury in 1984. At that time, however, the section under which the taxpayer retired did not distinguish between occupational injuries and non-occupational injuries. In 1998, after the municipality amended the section, the taxpayer's retirement was retroactively redesignated as occupational disability for the years 1992 through 1998. The taxpayer attempted to exclude the benefits from his gross income in 1992.

At the outset, the court in *Gabriel* acknowledged the principle that " 'state law

---

**2.** Revenue Rulings that reflect the IRS's longstanding and reasonable interpretations of its own regulations are entitled to "substantial judicial deference." *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001); *see* *also Tupper v. United States,* 134 F.3d 444, 447 (1st Cir.1998) (acknowledging the deference due to reasonable IRS interpretations of a statute found in Treasury Regulations together with Revenue Rulings).

creates legal interests but the federal statute determines when and how they shall be taxed.'" T.C. Memo 2000–328, 80 T.C.M. (CCH) 568 (quoting *Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932)). Citing a line of cases where the *nunc pro tunc* modification of a state-court decree providing for retroactive increases in alimony was deemed ineffective for federal income-tax purposes, the court observed that "recognition for Federal tax purposes of certain property rights retroactively conferred at the State or local level is not absolute" and concluded that the city's retroactive redesignation of the taxpayer's benefits was not effective for federal tax purposes. *See Carlton v. United States,* 7 Cl.Ct. 323, 325–26 (1985) (holding that plaintiffs were bound by their election of service pensions even though they were disabled at time of their retirements); *Pangburn v. Commissioner,* 13 T.C. 169, 1949 WL 30 (1949) (same).

The only case cited by the Wheelers in support of their retroactivity argument, *Strickland v. Commissioner,* 540 F.2d 1196 (4th Cir.1976), is readily distinguishable. In *Strickland,* the taxpayer was a veteran who retired for service in October 1964. 540 F.2d at 1197. He subsequently applied to the Veterans Administration for service-connected disability benefits and was awarded a 10% disability rating. *Id.* In March 1966, the taxpayer filed a second claim with the VA requesting an increase in his disability compensation. *Id.* Ten months later, on January 17, 1967, the VA informed the taxpayer that he was being rated 100% disabled and therefore eligible for disability compensation. It also informed him that it was forwarding the appropriate form to the Retirement Division of the Army to waive the amount of VA compensation from his retirement pay. *Id.* The VA's letter stated, "When we receive [the waiver form] from the Department of the Army, we will increase your

monthly compensation benefits." *Id.* The form was returned to the VA by the Army on February 1, 1967. *Id.*

The IRS argued that the payments were not excludable under § 104(a) because the payments received by the taxpayer from April through December 1966 were pursuant to a regular retirement plan (as opposed to a disability plan). *Id.* at 1197–98. The Fourth Circuit disagreed. The court noted that the statute under which the taxpayer was entitled to retroactivity "conditions the effective date of any such award upon *receipt of the application* ...." *Id.* at 1199 (emphasis added). The taxpayer submitted his application in March 1966. As such, the Court observed:

Strickland, having complied with the statutory requirements for increased disability requirements and having been deemed entitled to such benefits as of March 28, 1966, cannot be charged with the eleven month delay. He had done all he could do and all the Veterans Administration required him to do.

*Id.* at 1199. The taxpayer was thus entitled to exclude the amounts received in April through December 1966. *Id.*

Here, the Massachusetts statute under which the Wheelers claim the right to retroactivity, § 94B(2), does not condition the effective date of the award upon receipt of the application. It is likewise undisputed that the Board did not grant Mr. Wheeler's application for occupational-disability retirement until May 2000, after the tax years in question. *Strickland* is thus inapposite to the present case.

Accordingly, the Court concludes that the retirement benefits received by the Wheelers in 1997, 1998, and 1999 are not excludable from gross income under 26 U.S.C. § 104(a)(1) because they were not amounts received under workmen's-compensation acts as compensation for person-

al injuries or sickness. The Wheelers are therefore not entitled to refunds for the relevant tax years.

### III. *Conclusion*

For the reasons set forth above, plaintiff's motion for summary judgment is DENIED, and defendant's motion for summary judgment is GRANTED. Judgment shall enter accordingly.

**So Ordered.**