EUGENE T. CHAPMAN and MARIE CHAPMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chapman v. Commissioner
Docket No. 3180-80.
United States Tax Court
T.C. Memo 1982-415; 1982 Tax Ct. Memo LEXIS 325; 44 T.C.M. (CCH) 554; T.C.M. (RIA) 82415; July 26, 1982. *325 In 1966, P retired on disability, but at the time of such retirement and during 1976 and 1977, he was not permanently and totally disabled. During 1977, P was employed as a night auditor for a motel. Held, since P was not permanently and totally disabled at the time of his retirement or in 1976 or 1977, he does not qualify for the exclusion of any of his disability pension under sec. 105(d), I.R.C. 1954, as applicable to taxable years beginning after 1976, or under the transitional rules contained in sec. 505(c), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1567-1568, and sec. 301(b), Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, 91 Stat. 151. Eugene T. Chapman, pro se. Judy K. Hunt and Jane T. Dickinson, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $744.00 in the petitioners' Federal income tax for 1977. The issue for decision is whether the petitioners are entitled to exclude from their gross income any of the disability pension received by Mr. Chapman during 1977. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Eugene *326 T. and Marie Chapman, husband and wife, resided in Kissimmee, Fla., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1977 with the Internal Revenue Service Center, Chamblee, Ga.
Prior to August 1966, Mr. Chapman was employed as a scientific and technical photographer at the U.S. Army Engineer Research & Development Laboratories, Ft. Belvoir, Va. Because of a respiratory condition and arthritis, he could not engage in any activities which required lifting, and accordingly, he was unable to continue such work. However, he was not totally disabled. On August 8, 1966, he retired from Civil Service employment. Such retirement was based on his disability and not on his years of service. At that time, Mr. Chapman was 47 years old. Under 5 U.S.C. sec. 8337(d) (1976), Mr. Chapman was allowed to work and still receive his disability pension, provided his earnings from wages and self-employment did not, for each of 2 consecutive years, equal at least 80 percent of the current rate of compensation for the position he occupied immediately prior to retirement. [1] Following his retirement from Civil Service employment, Mr. Chapman worked *327 as a bookkeeper for 6 months, and from 1967 until December 20, 1979, he worked as a night auditor for various motels. During 1977, he was employed by Orlando Quality Motel West, Inc., and received wages of $9,435. Also, during that year, he received a disability pension from the Civil Service Commission of $8,118. During 1977, Mr. Chapman was 59 years old; he was not totally disabled during 1976 or 1977. On their 1977 return, the petitioners reported wage income of $9,435 and a disability pension of $8,118 and claimed a disability income exclusion of $2,647. Also, they claimed a deduction for charitable contributions of $650. With their return, the petitioners included Form 2440 (Disability Income Exclusion) and a statement captioned "Physician's Certification of Permanent and Total Disability." Such statement was signed by a doctor, but he did not certify that Mr. Chapman was permanently and totally disabled on the date of his retirement, or on January 1, 1976, or on January 1, 1977. In his notice of deficiency, the Commissioner determined that the petitioners were not entitled to a disability income exclusion. Also, he disallowed *328 the charitable contribution deduction claimed by the petitioners. OPINION The issue for decision is whether during 1977 the petitioners are entitled to a disability income exclusion. Generally, section 105(d), Internal Revenue Code of 1954, [2] provides a limited exclusion for the amounts received as wages or payments in lieu of wages for a period during which the taxpayer is absent from work on account of permanent and total disability. Section 105(d) was revised by section 505(a) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1566-1567, and the section as revised is applicable to taxable years beginning after December 31, 1976. [3] *329 In order to qualify for the exclusion under the revised provisions, the taxpayer must not have attained age 65, must have retired on disability, and when he retired, must have been permanently and totally disabled. Sec. 105(d)(1). Section 105(d)(4) defines permanent and total disability as the inability: to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to be permanently and totally disabled unless he furnishes proof of the existence thereof in such form and manner, and at such times, as the Secretary may require. See sec. 7.105-2, Temp. Income Tax Regs., 26 C.F.R. sec. 7.105-2 (1981); see also secs. 1.105-8(j), 1.105-9, Proposed Income Tax Regs., 45 Fed. Reg. 46,089-46,092 (July 9, 1980). The revised rules of section 105(d) replace the less restrictive provisions which applied in earlier taxable years. [4] *331 See Pearson v. Commissioner,76 T.C. 701, 704-705 (1981). However, section 505(c) of the Tax Reform Act of 1976, 90 Stat. 1567-1568 *330 (as amended by section 301(b) of the Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, 91 Stat. 151), provides transitional rules for taxpayers who retired before 1977. According to such provision, such a taxpayer, although he was not permanently and totally disabled at the time of his retirement, may qualify for the exclusion for a taxable year beginning after 1976 provided he was permanently and totally disabled on January 1, 1976, or on January 1, 1977. See Pearson v. Commissioner,supra at 705. Thus, to qualify for the exclusion under the revised section 105(d), Mr. Chapman must prove that he was so disabled at the time of his retirement, or to qualify under the transitional rules, he must prove that he was so disabled on January 1, 1976, or on January 1, 1977. The Commissioner maintains that the petitioners have failed to prove that Mr. Chapman was permanently and totally disabled on any of such dates and that they failed to furnish proof of such disability in accordance with his regulations. For purposes of section 105(d), an individual is considered permanently and totally disabled if he is unable to engage in any substantial gainful activity by reason of his disability. Sec. 105(d)(4). Mr. Chapman testified that although he was unable to perform his duties as a scientific and technical photographer, he was not totally disabled when he retired. Also, he testified that he was not totally disabled during 1976 or 1977. Furthermore, it is clear that subsequent to his retirement from Civil Service employment, Mr. Chapman was able to, and did, engage in substantial gainful activity within the meaning of section 105(d)(4). See sec. 7.105-2, Temp. Income Tax Regs., 26 C.F.R. sec. 7.105-2 (1981); see also sec. 1.105-9(c)(2), (3), and (4) Ex. 4, Proposed Income Tax Regs., 45 Fed. Reg. 46,092 (July 9, 1980). Thus, Mr. Chapman failed to satisfy the permanent and total disability requirement of section 105(d) *332 or of the transitional rules of section 505(c), Tax Reform Act of 1976, and section 301(b), Tax Reduction and Simplification Act of 1977. Moreover, the Form 2440 submitted by the petitioners did not certify that Mr. Chapman was permanently and totally disabled when he retired, or on January 1, 1976, or on January 1, 1977. Section 105(d)(4) expressly authorizes the Secretary to prescribe the manner and form and time for proving disability, and his applicable regulations require that the taxpayer attach to his return "A certificate from a qualified physician attesting that" (Sec. 7.105-1(13), Temp. Income Tax Regs., 26 C.F.R. sec. 7.105-1 (13) (1981)) the taxpayer was permanently and totally disabled on one of the relevant dates. The petitioners did attach to their return a statement signed by a physician. However, although the form contains a box for the physician to certify the disability, he did not mark either of the boxes. Hence, there has been no compliance whatsoever with the Secretary's regulations as to the proof of disability, and for this additional reason, we must hold that the petitioners are not entitled to the exclusion under section 105(d). The petitioners argue *333 that section 105(d)(6) and section F of the instructions for Form 2440 entitle them to a disability income exclusion, but such argument is without merit. Section 105(d)(6) and section F of such instructions provide that a taxpayer may elect to report the receipt of disability income payments under the annuity cost recovery provisions of section 72. In the event a taxpayer makes such an election, he is not entitled to a disability income exclusion under section 105(d)(1). See sec. 7.105-1(17)-(19), Temp. Income Tax Regs., 26 C.F.R. sec. 7.105-1(17)-(19) (1981); see also sec. 1.105-10, Proposed Income Tax Regs., 45 Fed. Reg. 46,092-46,093 (July 9, 1980). Thus, the provisions of section 105(d)(6) have nothing to do with the petitioners' right to the exclusion. The petitioners also argue that since they were entitled to the exclusion under section 105(d) before 1977, they should be allowed to continue such exclusion. However, the law under which they previously were allowed a disability income exclusion was changed by Congress. For 1977 and later years, Congress restricted the exclusion and specifically considered taxpayers such as Mr. Chapman. Congress laid down specific rules *334 under which such a taxpayer could continue to exclude his disability pension, and we have found that Mr. Chapman has failed to satisfy the new rules of section 105(d) or the transitional rules of section 505(c), Tax Reform Act of 1976, and section 301(b) Tax Reduction and Simplification Act of 1977. Accordingly, we must conclude that the petitioners are not entitled to continue the exclusion. See Haar v. Commissioner, 78 T.C.     (May 26, 1982), on appeal (8th Cir. July 12, 1982); Pearson v. Commissioner,76 T.C. at 706. The petitioners did not argue at trial or in their brief that they were entitled to the charitable deduction claimed by them and disallowed by the Commissioner, and at trial, they offered no evidence to substantiate such deduction. Accordingly, it appears that they have conceded such issue. Moreover, they have the burden of proving their right to such a deduction, and since they offered no evidence in support of such right, we must hold that they are not entitled to such deduction. Rule 142(a), Tax Court Rules of Practice and Procedure; Schumaker v. Commissioner,451 F. 2d 1349 (6th Cir. 1971), affg. a Memorandum Opinion of this Court. Decision will be entered *335 for the respondent.
Footnotes
1. Mr. Chapman retired at a G.S. grade 11, step 5.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1977, unless otherwise indicated. ↩
3. As originally enacted, the revised sec. 105(d) was made applicable to taxable years beginning after Dec. 31, 1975. Sec. 508, Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1569. However, sec. 301(a) of the Tax Reduction and Simplification Act of 1977, Pub. L. 95-30, 91 Stat. 151, postponed the applicability of such revised section to taxable years beginning after Dec. 31, 1976. See Pearson v. Commissioner,76 T.C. 701, 704↩ (1981).
4. Sec. 105(d), prior to its amendment by the Tax Reform Act of 1976, provided as follows: (d) Wage Continuation Plans.--Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. * * *