JAMES R. BEARD AND KATHLEEN T. BEARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beard v. Commissioner
Docket No. 22033-80.
United States Tax Court
T.C. Memo 1984-24; 1984 Tax Ct. Memo LEXIS 651; 47 T.C.M. (CCH) 911; T.C.M. (RIA) 84024; January 11, 1984. *651 Held, petitioners are not entitled to exclude disability annuity payments from income under sec. 105, I.R.C. 1954. James R. Beard, pro se. Marion S. Friedman, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: The Commissioner determined a deficiency of $817 in the petitioners' Federal income tax for 1977. The sole issue for decision is whether the petitioners are entitled to exclude from their gross income any of the disability pension received during 1977. FINDINGS OF FACT At the time of the filing of the petition herein, the petitioners James R. Beard and Kathleen T. Beard (petitioners) resided in New Mexico. They timely filed their joint Federal income tax return for 1977 with the Internal Revenue Service Center at Austin, Texas. Prior to October 1, 1973, petitioner James R. Beard (Beard) was employed with the Department of Defense. On that date, he retired from his employment and began receiving disability annuity payments because of a hearing impairment.His contributions to the plan under which he received those payments were $2,796. In February 1976, Beard began to work for the City of Albuquerque's Animal Control Center, which employment *652 continued until October 1978. [1] This was his first employment since his retirement in 1973. During the three-year period 1976 through 1978, petitioners reported income from wages totaling the following amounts: 1976
$ 7,024.00
1977
12,311.00
1978
11,131.78
In the course of his employment during this three-year period, Beard was paid at a rate in excess of the minimum wage, and while employed he performed his duties as required. On October 1, 1978, he resigned from his position with the Albuquerque Animal Control Center. [2]
During 1977, Beard received $4,161 in disability annuity payments. Petitioners did not report this amount as income on their 1977 return. By letter dated June 30, 1980, [3] Beard was notified by the Office of Personnel Management that his disability annuity payments were being suspended as of December 31, 1979, because his income from wages in the two prior years was 80 percent or more of the then current salary of the position *653 from which he had retired, so that he was "considered to be restored to earning capacity." On July 14, 1980, Beard requested restoration of these payments because of continuing hearing loss and loss of equilibrium, and payments were resumed in June 1981. In December 1980, he was seen by a physician whose report indicates that Beard was suffering from a permanent, severe hearing loss. On October 15, 1980, respondent issued to petitioners a notice of deficiency which determined a deficiency of $817. The notice indicated that, since Beard had earned in excess of $12,000 during 1977, he was not considered to be disabled. In their amended petition, petitioners claimed that Beard was and has been disabled since October 1, 1973.
OPINION The issue for decision is whether petitioners are entitled to exclude from gross income in 1977 the disability annuity payments at issue. Generally, section 105(d)[4] provides a limited exclusion for amounts received as payments in lieu of wages for a period during which the taxpayer is absent from work *654 because of permanent and total disability.[5] *655 In order to qualify for the exclusion, the taxpayer under the first three requirements of section 105(d)(1) must not have attained age 65, must have retired on disability, and, when he retired, must have been permanently and totally disabled. Section 105(d) was revised by section 505(a) of the Tax Reform Act of 1976, Pub. L 94-455, 90 Stat. 1520, 1566-1567, as amended by section 301(a) of Pub. L. 95-30, 91 Stat. 126, 151, by providing a transitional rule for taxpayers who retired before 1977. According to that provision, such taxpayers, although not permanently and totally disabled at the time of their retirement, may qualify for the exclusion for a taxable year beginning after 1976 provided they were permanently and totally disabled on January 1, 1976, or on January 1, 1977. See Pearson v. Commissioner,76 T.C. 701, 704-705 (1981). Section 105(d)(5) (now section 105(d)(4)) defines permanent and total disability as the inability-- to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lastedd or can be expected to last for a continuous period of not less than 12 months. Substantial gainful activity is defined in the temporary regulations applicable to the year at issue as "the performance of significant duties over a reasonable period of time in work for remuneration or profit * * *." 26 C.F.R. sec. 7.105-2(b) (1983), Income Tax Regs. Full-time employment at or above the minimum wage conclusively establishes the taxpayer's ability to engage in substantial gainful activity. 26 C.F.R. sec. 7.105-2(c)(4) (1983), Income Tax Regs. Petitioners appear to take the position that, because Beard still in fact is suffering *656 from his hearing impairment, he is disabled. However, in order to qualify for the exclusion under section 105(d), petitioners must show, inter alia, that Beard was permanently and totally disabled within the meaning of that section. Specifically, they must satisfy the last requirement of section 105(d)(1)--that the payments were "wages or payments in lieu of wages for a period during which the employee is absent from work on account of permanent and total disability." It is clear, however, that Beard was able to--and did--engage in substantial gainful activity within the meaning of section 105(d)(4) during the period 1976 to 1978. He earned in excess of $7,000 during 1976, more than $12,000 in 1977, and over $11,000 in 1978. During those years he earned at least the minimum wage. He thus was not totally and permanently disabled under the applicable temporary regulations [6] during 1977, the year to which the payments at issue were attributable. Section 150(d)(1). Moreover, even if Beard's hearing deficiency may have caused him some difficulty in jobs involving conversation with other persons, petitioners have failed to show that he was not qualified to perform other jobs in which *657 hearing was not a prerequisite. Haar v. Commissioner,78 T.C. 864, 868 (1982), affd. 709 F.2d 1206 (8th Cir. 1983). Retitioners have not, therefore, satisfied the permanent and total disability requirements of the applicable statutory and regulatory provisions. We hold for respondent. Decision will be entered under Rule 155.
[7]
Footnotes
1. During 1976 he also worked for two other employers. ↩
2. Petitioners entered into evidence a letter from the Albuquerque Animal Control Center explaining that Beard's resignation was due to his hearing problem and resulting loss of equilibrium.↩
3. Beard testified that he did not receive this letter until his Congressman obtained it for him approximately six months after the payments were suspended.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
5. Sec. 105(d)(1) provides: (d) Certain Disability Payments.-- (1) In General.--In the case of a taxpayer who-- (A) has not attained age 65 before the close of the taxable year, and (B) retired on disability and, when he retired, was permanently and totally disabled, gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of permanent and total disability.↩
6. 26 C.F.R. sec. 7.105-2(c)(4) (1983)↩, Income Tax Regs.
7. As stipulated, petitioners are entitled, under sec. 72(d), to exclude from gross income in 1977 an amount equal to Beard's original contributions to the plan, or $2,796. Since the notice of deficiency did not take this amount into account, a recomputation is required.↩